1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10   RORY O'REILLY, et al.,            )   Case No. CV 12-4365-PJW
                                       )
11                   Plaintiffs,       )
                                       )   FINDINGS OF FACT AND
12            v.                       )   CONCLUSIONS OF LAW
                                       )
13   UNITED STATES OF AMERICA,         )
                                       )
14                   Defendant.        )
     ──────────────────────────────── )

15

16                                    I.

17                           FINDINGS OF FACT

18       1.   This Federal Tort Claims Act ("FTCA") action stems from a

19   bicycle/automobile accident that occurred on East Camino Cielo Road in

20   Santa Barbara, California at approximately 5:00 p.m. on February 8,

21   2011.  East Camino Cielo Road generally runs in an east/west direction

22   through the Los Padres National Forest.  It is a narrow--15 feet

23   across at the site of the accident--curvy, steep road, reaching a

24   height of 4,000 feet at the summit.  There are no markings on the road

25   to delineate the center line or the edge of the road.  The road is

26   popular among amateur and professional cyclists who ride and train in

27   the Santa Barbara area.  According to Plaintiff Rory O'Reilly, he had

28

ridden on this road more than 100 times before the accident without incident.

2.    At the time of the accident, O'Reilly was riding his bike downhill in the eastbound lane of East Camino Cielo.  O'Reilly, who was 55 at the time, was accompanied by two teenaged, "junior" riders he was coaching.  O'Reilly and the junior riders were traveling at about 25 m.p.h.  About a minute into their descent from the summit, O'Reilly and the junior riders encountered a truck being driven in the opposite direction on East Camino Cielo by United States Forest Service employee Warren Johnson, Jr.  The truck Johnson was driving was owned by the Forest Service and Johnson was acting within the course and scope of his employment as a Forest Service worker at the time.  Another employee, Nicholas Riley, was a passenger in the truck.

3.    When O'Reilly first spotted the truck, it was about 200 feet away from him, traveling in the westbound lane of East Camino Cielo at a speed of about 25 m.p.h.  The truck then began to turn in a westerly direction, following the road.  Due to the angle of the road (sloping upward), the time of day (early evening), and the orientation of the road (west by northwest), when Johnson turned to the westerly direction, he was blinded by the setting sun.  As a result, Johnson was unable to see in front of him.  Unfortunately, however, he continued to proceed at 25 m.p.h.  As he did, he caused the truck to drift from the right side of the road to the left side of the road, blocking O'Reilly's path down East Camino Cielo.  Johnson's abrupt change of course left O'Reilly unable to react in time and he collided with the Forest Service truck, hitting the front bumper, sailing on top of the hood, and then toppling to the ground.  The first time Johnson and Riley saw O'Reilly was when he landed on the truck's hood.

4.   The impact of the collision fractured O'Reilly's scapula, clavicle, eight ribs, and femur.  He also suffered a punctured lung. O'Reilly experienced excruciating pain from these and the other injuries he sustained in the accident.  It took the ambulance one hour to reach the scene of the accident and take O'Reilly away.

5.   O'Reilly was transported to Santa Barbara Cottage Hospital for treatment.  The following day, he underwent surgery to repair his shoulder and knee fractures.  The surgeon placed surgical screws in his knee and a surgical plate on top of his clavicle to stabilize the bones and promote healing.  O'Reilly remained at the hospital from February 8th to the 15th.  He was then transferred to the hospital's neighboring convalescent center, where he stayed until February 24th, when he was discharged to his home.

6.   O'Reilly was confined to a wheelchair for about three months after the accident.  He required constant care, much of which was provided by his wife, co-Plaintiff Laura Jewitt-O'Reilly.  After he was able to get out of the wheelchair, he walked with a cane for several more months while his body healed.

7.   About six months after the accident, on August 5, 2011, O'Reilly underwent a second surgery in which the hardware was removed from his shoulder and knee because it was causing him discomfort.  The surgeon also performed a manipulation of his shoulder in order to loosen some of the muscle and ligament tightness that had developed as a result of the limited use of the shoulder.  During the year following the August 2011 procedure, O'Reilly continued to see his doctor for orthopedic evaluations.  O'Reilly was also treated by a chiropractor.  Despite this treatment, he continued to experience pain and discomfort in his knee and shoulder.

3

8.   On June 4, 2012, O'Reilly underwent a left knee arthroscopy with synovectomy and chondroplasty.  In this procedure, the surgeon examined O'Reilly's condylar notch and surrounding cartilage and shaved away scar tissue.  The doctor noted the presence of a one millimeter "step-off" at the location of O'Reilly's condyle fracture. O'Reilly's doctor believes that, as a result of the step off, he may need a total knee replacement in the next 10 years and would likely need a second one 20 years from now.

9.   At the recommendation of his doctor, O'Reilly sought a second opinion regarding future treatment from Dr. James Tibone at the Kerlan-Jobe clinic in Los Angeles.  On October 31, 2012, O'Reilly visited Dr. Tibone, who examined him and reviewed the medical records, including x-rays and MRIs.  In Dr. Tibone's opinion, O'Reilly does not need any additional surgery and believes that additional surgeries will not provide any relief.  Dr. Tibone recommended instead that O'Reilly wear a knee brace.

10.   The government's medical expert agrees with Dr. Tibone.  He does not believe that O'Reilly will require a knee replacement and believes further that, even if he did, a second knee replacement would not be required.  In fact, he, too, does not believe that Plaintiff will be helped by surgery to his knee or shoulder.  The Court accepts the views of Dr. Tibone and the government's medical expert and concludes that total knee replacement surgery is not warranted.

11.   On July 2, 2013, Dr. Donald Fareed performed arthroscopic surgery on O'Reilly's shoulder.  During that procedure, Dr. Fareed discovered the presence of a labral tear in O'Reilly's left shoulder, which was not present in 2011 or 2012.  The surgery helped alleviate

4

some of O'Reilly's shoulder pain.  He testified that he has scheduled a similar procedure for his knee for the week following the trial.

12.  O'Reilly's bicycle, valued at $3,490, was totaled in the accident.  He also incurred miscellaneous medical expenses in the amount of $523.25.

13.  Between the time of the accident and the date of the trial, O'Reilly incurred medical costs totaling $216,248.39.  The Court finds that these medical expenses were reasonable and necessary and were the direct result of the accident and the injuries he suffered in the accident.  The Court also finds that O'Reilly will need additional medical care, including the procedure scheduled with Dr. Fareed for the week after the trial and additional orthopedic evaluations/treatment and chiropractic treatment for the rest of his life.

14.  Prior to the accident, O'Reilly worked as a finish carpenter and a cycling coach, earning on average about $38,187 per year (based on earnings of $42,894 in 2009 and $33,380 in 2010).  Seven months after the accident, O'Reilly attempted to go back to work as a finish carpenter but found that he was unable to perform the duties required of that job.  The Court finds that O'Reilly is unable to perform the job of finish carpenter any longer due to the impairments he suffers from the accident.

15.  The parties stipulated that O'Reilly's past lost wages totaled $82,180.00.  His future lost earnings total $295,262 (based on total lost wages of $427,697 dollars less $132,435 he could earn at a minimum wage job during the eight-year period between the trial and his 65th birthday).

16.  Clearly, O'Reilly has and will continue to have physical limitations caused by the injuries he suffered in the accident.  For

5

example, he cannot squat, kneel, climb, stand for long periods of time, or lift heavy objects above his head.  He will also experience pain and suffering, both physical and mental.  For example, O'Reilly was an avid and passionate world-class cyclist before the accident--a former World Champion and Olympian--but will never have the ability to compete at the level he was competing before the accident.

17.  O'Reilly's wife, Laura Jewitt-O'Reilly, is also a plaintiff in this action and has sued for loss of consortium.  The Court finds that, as a direct result of the accident and the injuries her husband suffered, Laura Jewitt-O'Reilly suffered a loss of consortium.  Her relationship with her husband was materially altered immediately after the accident due to his injuries and continues to be affected.

II.

CONCLUSIONS OF LAW

1.  Jurisdiction is vested in this court pursuant to the FTCA, 28 U.S.C. §§ 1346(b) and 2671-2680.

2.  Venue is proper in this court because the accident occurred in this district and the O'Reillys reside in this district.  28 U.S.C. § 1402(b).

3.  Under the FTCA, the Court applies California negligence law in analyzing Plaintiffs' claims and the government's defenses.  *See* 28 U.S.C. §§ 1346(b) and 2674.

4.  In order to prevail on his negligence claim, O'Reilly must prove by a preponderance of the evidence that Johnson was negligent in the operation of the government truck and that Johnson's negligence caused O'Reilly to be injured.  *See* Cal. Civil Code § 1714(a) (California's general negligence statute); *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917-918 (1996) (reciting fundamental elements

6

of negligence: duty, breach, causation, damages).  The Court concludes that Johnson was negligent in failing to stop his truck when he was blinded by the sun and could not see where he was going.  As a result of not being able to see where he was going, Johnson caused the truck to drift over to O'Reilly's side of the road, blocking his path and causing the bike and the truck to collide.  As is also clear, O'Reilly was injured as a result of Johnson's negligence.

5.   The Court has considered the possibility that O'Reilly's conduct contributed to the accident and concludes that there is no evidence of that.  *See* Cal. Civil Code § 1431.1(c) (adopting California voters' Proposition 51, which statutorily ensures that "defendants in tort actions shall be held financially liable in closer proportion to their degree of fault"); *Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 812-13 (1975) (replacing "all-or-nothing" system of tort liability with comparative fault system "under which liability for damage will be borne by those whose negligence caused it in direct proportion to their respective fault").

6.   The Court awards damages to O'Reilly as follows:

|     |                                                     |              |
|-----|-----------------------------------------------------|--------------|
| i.  | Past Medical Expenses                               | $216,248.39  |
| ii. | Past Pain and Suffering (February 8, 2011 until today) | $250,000  |
| iii. | Past Lost Wages                                    | $82,180      |
| iv. | Future Medical Expenses                             | $75,000      |
| v.  | Future Pain and Suffering                           | $200,000     |
| vi. | Future Lost Wages                                   | $295,262     |
| vii. | Property Damage (bike and miscellaneous medical-related expense) | $4,013.25 |
|     | Total Damages                                       | $1,122,703.64 |

7

7.     Loss of consortium requires proof by a preponderance of the evidence that: (1) Plaintiffs were married at the time of the accident; (2) Rory O'Reilly suffered a tortious injury; and (3) Laura Jewitt-O'Reilly experienced a loss of consortium proximately caused by the tortious injury. *LeFiell Manufacturing Co. v. Superior Court*, 55 Cal. 4th 275, 284-85 (2012) (citing *Hahn v. Mirda*, 147 Cal. App. 4th 740, 746, n.2 (2007).)  Laura Jewitt-O'Reilly carried her burden of proof.  The Court awards her $65,000 for past, present, and future loss of consortium.

IT IS SO ORDERED.

Dated this 12th day of November 2013

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Consent\O'Reilly v. USA\Findings of Fact and Law.wpd

8